KELLY, Respondent, *v.* WEST COAST CONSTRUCTION CO.
ET AL., Appellants.

(No. 7,750.)

(Submitted March 21, 1938.  Decided April 21, 1938.)

[78 Pac. (2d) 1078.]

464

*Mr. M. J. Thomas,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Respondent, submitted a brief; *Mr. Rankin* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from a judgment modifying the findings of the Industrial Accident Board. The board has perfected this appeal. It found that claimant was accidentally injured while employed by the West Coast Construction Company, which was enrolled under plan No. 3 of the Workmen's Compensation Act. (Rev. Codes 1935, secs. 2900 et seq.) Claim was made for compensation, which was accepted by the board, and various sums by way of compensation were paid before any hearing was had on the claim. The board ordered compensation paid to the claimant at the rate of $16.50 per week for the period of 78 weeks, in addition to all payments theretofore made. The amount of compensation ordered paid by the board was for a total disability.

On appeal to the district court the findings of the board were modified by striking out the provision that compensation be paid for 78 weeks. The court found that the disability of claimant was permanent in character. The board had impliedly found

the disability to be total, but made no express finding as to whether the disability was permanent or temporary in character. The trial court ordered the board to pay compensation at the rate of $16.50 per week "during the period of disability, not exceeding 396 weeks, in addition to sums theretofore paid."

The board found that the claimant suffered from an injury from an industrial accident arising out of and in the course of his employment. The clear inference from the findings of the board, although not expressly so stated, is that it regarded the disability of claimant not to be permanent in character. Thus it will be observed that the primary question is: Was the trial court justified in finding the disability of claimant to be permanent in character as a result of the industrial accident suffered by him?

Dr. Shearer treated the claimant at various times and made reports to the board, commencing in November following the accident and ending the next March. He reported the nature of the injury as "contusions and bruises and large lipoma on left shoulder." He performed an operation for the removal of this lipoma. His reports were all to the effect that the condition of claimant was slowly improving, and expressed the opinion that his disability was not permanent. The latter part of March the claimant went to Dr. Hawkins, who treated him until May 3, when he reported to the board that claimant complained of pain in his left shoulder and leg, and of his inability to sleep at night. After repeated physical examinations, he said: "We fail to find any connection between the majority of his present symptoms and his accident." Dr. Hawkins recommended that claimant be examined by another physician.

Dr. Cooney examined the claimant and reported his complaints as follows: "Left hand is painful at night, becomes swollen in daytime if I let it hang down. Left shoulder, constant dull pain over shoulder blade, aggravated at night, sleeps poorly. Left hand and shoulder somewhat weakened. Left thigh becomes swollen, sometimes in the night, sometimes during the day. Left foot, stiff and numb, to a slight or moderate degree." As to the function of members claimed to be affected,

he said: "Left hand, forearm, arm and shoulder, normal. Left lower limb, normal." He stated his conclusions as follows: "Claimant's symptoms are entirely subjective, and from history of injury, the opinions of three attending physicians and myself, there is no evidence to sustain trauma as the cause of his present nervous condition."

Dr. Lindstrom reported to the board on August 9, 1935, after three months' treatment, that claimant was suffering from traumatic neuritis in his left arm which had not cleared up. Three months later the same doctor reported that some permanent disability would result, consisting of some impairment of the left arm.

Claimant was examined at the Mayo Clinic at Rochester, Minnesota. Dr. Smith of that institution certified in conclusion: "His laboratory and special examinations were well within normal limits."

Dr. Lindstrom testified at the hearing before the referee for the board that the condition of claimant was progressively worse; that he was suffering from traumatic neuritis; that it was only reasonable to suppose that his disability came from his injury; and that it was hard to make a diagnosis except traumatic neuritis. He said as to the connection between the injury and the condition of claimant, as follows: "I would say that the effect on the arm and shoulder is directly due to the trauma. As to the other [myocarditis] I would say that if it is not due to the trauma, at least it was made very much worse by it. Not having been able to make a definite diagnosis, I could not say, of course, as to the exact cause."

The claimant testified as to his disability, pains, and suffering. On the record thus made, the board found as we have indicated. On the appeal to the district court, both the claimant and the board without objection offered additional testimony. Claimant again testified as to his condition, as did Dr. Lindstrom. The latter said claimant's condition had grown worse since the hearing before the referee; that he was unable to do any work for which he was fitted, and expressed an opinion that he was permanently and totally disabled.

Two policemen and a taxi driver told of their efforts, within a month preceding, to place the claimant in a taxicab to remove him to the police station while he was intoxicated. His resistence, as described by these witnesses, clearly indicated the claimant on that occasion was capable of offering the resistance of a strong, able-bodied man. Claimant testified he took but one drink and did not recall this encounter.

The district court had before it the same testimony and report as did the board. When there is conflict in the evidence before the board, the district court may not reverse the board unless the evidence clearly preponderates against the findings of the board. (*Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43; *Tweedie* v. *Industrial Acc. Board*, 101 Mont. 256, 53 Pac. (2d) 1145.)

The reports of Drs. Shearer, Hawkins, Cooney and Smith were all in conflict with Lindstrom on the question of the permanency of the injury resulting from the industrial accident, and also on the question of his claimed existing condition being a result of the industrial accident. Dr. Lindstrom's testimony before the board was not without qualification on the latter question. In this state of the record it cannot be said that the evidence before the board preponderated against the findings.

Here there was additional evidence offered in the district court. If this testimony was unimportant, the district court was still bound by the same rule on appeal which obtains where the appeal is heard on the record before the board. (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.) If additional evidence is important, then the district court must consider the record before the board and the additional evidence, and upon the evidence as a whole decide the case. (*Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880; *Woin* v. *Anaconda Copper Min. Co.*, 99 Mont. 163, 43 Pac. (2d) 663.)

The additional evidence before the district court given by Dr. Lindstrom, who had testified before the referee for the board, was somewhat stronger on the proposition of the disability of the claimant being total and permanent in character, but he added nothing to what he had said before the board relating to

the question as to whether the condition in which he found the claimant was the result of his industrial accident.

In this state of the record, the district court had no additional evidence before it from which it could conclude that claimant was totally and permanently disabled as a result of the industrial accident. The board had found, as we have said, that the claimant had suffered an industrial accident resulting in total disability. It had paid compensation for a total disability before an order was made for the payment of 78 weeks' additional compensation. In the order allowing this additional compensation, the board did not limit the payments to that amount. After the board made the order determining that claimant had suffered an industrial accident resulting in injury amounting to a total disability, he was entitled to receive compensation during the continuance of this disability as a result of the industrial accident, for not exceeding the maximum time allowed by law. (*Lunardello* v. *Republic Coal Co.*, 101 Mont. 94, 53 Pac. (2d) 87.) After the payment of the 78 weeks' compensation allowed by the board, it is its duty to make such order as the condition of the claimant may then justify with reference to further compensation under its continuing jurisdiction. (*Meznarich* v. *Republic Coal Co.*, 101 Mont. 78, 53 Pac. (2d) 82; *Lunardello* v. *Republic Coal Co.*, supra.)

The judgment of the district court is reversed and the cause remanded with directions to affirm the order of the board, and to remand the cause to the board for further proceedings in accordance with the views expressed in this opinion.

ASSOCIATE JUSTICES ANDERSON and STEWART concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the above decision.

MR. JUSTICE ANGSTMAN:

I dissent. The Industrial Accident Board and the district court found that claimant sustained a compensable injury.

Both determined that he was totally disabled. The only point of difference between the board and the court was whether the disability was temporary or permanent. The board apparently thought it was temporary, as it allowed compensation for only 78 weeks in addition to payments already made. The court thought the disability was permanent. In either case the proper order was to award compensation "during the period of disability" (*Meznarich* v. *Republic Coal Co.*, 101 Mont. 78, 53 Pac. (2d) 82, 87; *Lunardello* v. *Republic Coal Co.*, 101 Mont. 94, 53 Pac. (2d) 87), subject to a maximum of 300 weeks if the disability was temporary (section 2912, Rev. Codes), or 500 weeks if permanent (sec. 2913).

The word "permanent," as used in the Workmen's Compensation Act, "does not mean eternal or everlasting, but merely that the disability is lasting or continuous, as distinguished from temporary." (*Meznarich* v. *Republic Coal Co.*, supra; and see *Sykes* v. *Republic Coal Co.*, 94 Mont. 239, 22 Pac. (2d) 157.)

In my opinion, the evidence before the court, and some of which was not before the board, indicates that the disability of claimant is permanent within the above definition of that term. If it should turn out to be otherwise, the board has jurisdiction to adjudicate that fact whenever that contingency arises. The doctors who disputed Dr. Lindstrom did so more on the issue as to whether the disability was or is due to the accident rather than on the permanent character of the disability.

I think the judgment of the district court should be affirmed.